UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Baxter Healthcare Corporation, et al., | No. C 07-1359 PJH  (JL) |
| Plaintiffs, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' SUPPLEMENTATIONS TO INTERROGATORY NO. 5 (Docket No. 278)** |
| Fresenius Medical Care Holding, Inc., | |
| Defendants. | |

## FACTS

On June 7, 2007, Plaintiff Baxter served Interrogatory No. 5 asking Defendants to "[s]tate all factual and legal bases for any allegation by Fresenius that any claim of the patents-in-suit is unenforceable. . . ." (Joint Statement at 1) Defendants responded that "[a]t present, Fresenius has not alleged unenforceability based on inequitable conduct as an affirmative defense or counterclaim, but reserves the right to amend its answer." (*Id.*)

Fact discovery in this case closed on December 1, 2008. (*Id.*) Throughout the discovery period, Defendants have not claimed inequitable conduct and maintained that they were unaware of facts necessary to assert inequitable conduct. (*Id.*) Defendants' counsel, Matt Samuel, asked the district court (Hon. Phyllis J. Hamilton) for permission to later move to amend, should such facts become known. (*Id.*) Judge Hamilton ordered Defendants to add any inequitable conduct defense not later than "90 days before the close

of fact discovery," which would have been September 2, 2008.  (*Id.*) Defendants did not amend their Answer or disclose an inequitable conduct defense by that date. (*Id.*)

At the close of discovery, Fresenius concluded that some evidence of inequitable conduct exists and identified that evidence in its supplemental answer to Interrogatory No. 5. (Joint Statement at 3) The supplemental answer to Interrogatory No. 5 came eight days after the close of discovery. (Joint Statement at 1) In its supplemental answer, Fresenius disclosed three distinct inequitable conduct theories that together allegedly relate to all nine asserted patents. (*Id.*)

Fresenius' first theory involves the non-disclosure of a pre-critical date contract for sale of the patented product between Baxter and DEKA. (Joint Statement at 4) Fresenius deposed the Baxter employee who signed the contract early on, but he suffers from early-onset dementia. (*Id.*) Fresenius requested the deposition of DEKA's President Dean Kamen, who signed the contract for DEKA, but DEKA refused to produce him until the very last day of discovery. (*Id.*) Plaintiffs also made their 30(b)(6) on-sale bar-related witnesses available only during the last two weeks of discovery. (*Id.*) The supplemental answer to Interrogatory No. 5 came about one week after Fresenius learned of the information that would support an inequitable conduct theory. (*Id.*)

The second theory of inequitable conduct relates to prior art raised in a Japanese patent office proceeding involving DEKA, but that was not cited to the U.S. Patent Office. (*Id.*) Fresenius learned about the Japanese proceeding through its own efforts, but Plaintiffs refused to produce the relevant documents, ostensibly because they were in the possession of DEKA's foreign attorneys. (*Id.*) Fresenius had to independently obtain DEKA's own documents, then translate them for further analysis. (*Id.*) In its part of the Joint Statement, Fresenius says that it supplemented its response "promptly after concluding this process." (Joint Statement at 5)

Fresenius' third theory relates to Baxter's own prior art "Pac-X" dialysis machines. To help prove its inequitable conduct theory, Fresenius timely requested the software code for these devices, which Baxter claims it cannot locate, despite Baxter having sold

hundreds of them and that it is an FDA-regulated device. (*Id.*) Fresenius claims that it "seasonably supplemented based on the information Baxter did produce." (*Id.*)

## DISCUSSION

"A party . . . who has responded to an interrogatory . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). "A party that fails to supplement under Rule 26(e)(1) is "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Generally, a party may not abuse the supplementation provision of Rule 26(e) to inject new claims, defenses, or theories via amended discovery responses served after the close of discovery." Ann. Pat. Dig., § 41:160 (2009).

Plaintiff claims that Defendants' post-discovery disclosure is "far from harmless, as it contains sweeping, nonspecific allegations against numerous former Baxter attorneys, companies, and inventors in Japan– none of whom were deposed during fact discovery." (Joint Statement at 3) Plaintiff relies on *Contech Stormwater Solutions, Inc. V. Baysaver Tech., Inc.*, for the proposition that the interrogatory response should be struck because Defendants "were in possession of information well before the close of discovery." 534 F. Supp. 2d 616, 624-25 (D. Md. 2008). Defendants state that they amended their answer to Interrogatory No. 5 about one week after the close of discovery, because the information going to inequitable conduct did not come to light until the very end of fact discovery. (Joint Statement at 3-5) Plaintiff argues that Defendants relied on "two depositions taken in 2007, two third party depositions that Defendants did not even request until 15 months into discovery, and documents produced between 7 and 17 months before discovery closed," publicly available patent prosecution materials, and evidence that Defendants did not request until after the deadline to amend. (*Id.* at 2-3, n. 4)

It is often necessary to review documents and depose witnesses before stating any contention about inequitable conduct. *Semiconductor Energy Lab. Co. Ltd. v. CHI MEI*

*Optoelectronics Corp.*, 2006 WL 3826726 at *3 (N.D. Cal. Dec. 27, 2006) (granting leave to amend when "defendants would not have been able to plead inequitable conduct with sufficient specificity prior to obtaining witness testimony"); *Stanford v. Roche*, 2008 WL 624771 at *7 (N.D. Cal. Mar. 4, 2008) ("Despite the availability of this documentary evidence, it was reasonable– indeed, perhaps necessary– for Roche to wait until after obtaining corroborating deposition testimony" before amending its answer to include inequitable conduct). This case has been hotly contested and both parties have engaged in dilatory, hide-the-ball tactics. Fresenius argues that it only learned of information that would support inequitable conduct during the last two weeks of fact discovery. It could not have amended its answer to interrogatory No. 5 any earlier than it did because the parties were actively engaged in discovery right up until the cut-off.

Fresenius has not moved for leave to amend its answer or counterclaims to plead inequitable conduct. At this point, there is no claim or affirmative defense of inequitable conduct to which Plaintiff need respond. All Fresenius did was supplement its response to a contention interrogatory because new information was revealed at the end of the fact discovery period.

"Deadlines are not to be enforced mindlessly." *Wong v. Regents of U.C.*, 410 F. 3d 1052, 1060 (9th Cir. 2005). Fresenius promptly supplemented its answer as soon as it had obtained and reviewed relevant documents and deposed the witnesses involved in the underlying events, as it was required to do under Fed. R. Civ. P. 26(e)(1). Given the complexity of the issues in this case and the flurry of activity toward the end of fact discovery, the Court finds that Fresenius had a substantial justification for supplementing its answer after the close of fact discovery and hereby DENIES Plaintiff's motion.

IT IS SO ORDERED.

DATED: April 2, 2009

_____
JAMES LARSON
Chief Magistrate Judge

G:\JLALL\CHAMBERS\CASES\CIV-REF\07-1359\Order denying 278.wpd