UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BAXTER HEALTHCARE, et al.,

           Plaintiff(s),

      v.

FRESENIUS MEDICAL CARE HOLDINGS INC., et al.,

           Defendant(s).

                                            /

No. C 07-1359 PJH

**JURY INSTRUCTIONS**

## 1.1C  DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence [and the arguments of the attorneys], it is my duty to instruct you as to the law of the case.

[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.]

*or*

~~[A copy of these instructions will be sent with you to the jury room when you deliberate.]~~

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

*Civil-jt.Ins*
*2007 Edition*

## 1.6 WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

     1. the sworn testimony of any witness;

     2. the exhibits which are received into evidence; and

     3. any facts to which the lawyers have agreed

*Civil-jt.Ins*
*2007 Edition*

## 1.7 WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, [will say in their] closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I [give] [have given] a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

*Civil-jt.Ins*
*2007 Edition*

## 1.9 DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

*Civil-jt.Ins*
*2007 Edition*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINAL JURY INSTRUCTION NO. 1**

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

You have heard excerpts from the depositions of several witnesses in this case. You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

For deposition testimony that was read into the record by lawyers, rather than via video of the witness, do not place any significance on the behavior or tone of voice of the lawyer reading the questions or answers into the record.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FINAL JURY INSTRUCTION NO. 2

### USE OF INTERROGATORIES OF A PARTY

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

## 1.11 CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.


The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

*Civil-jt.Ins*
*2007 Edition*

# FINAL JURY INSTRUCTION NO. 3

## EXPERT OPINION

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

### FINAL JURY INSTRUCTION NO. 4

### CHARTS AND SUMMARIES

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

1

## FINAL JURY INSTRUCTION NO. 5

2

## STIPULATIONS OF FACT

3

4      The parties have agreed to certain facts that have been read to you.  You should therefore

5   treat these facts as having been proved.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINAL JURY INSTRUCTION NO. 6**

**SUMMARY OF CONTENTIONS**

I will now give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions. As I previously told you, Baxter and DEKA seek money damages from Fresenius for allegedly infringing claims 1 and 4-5 of the '823 patent and claim 12 of the '547 patent, together these are called "the asserted claims," by making, using, selling and offering for sale in the United States the Liberty Cycler peritoneal dialysis system.  In this case, the accused Liberty Cycler PD system includes the versions of the system used during the Alpha 1, Alpha 2, Beta 1 and Beta 2 clinical trials, as well as all commercially released versions to date.

Baxter and DEKA also argue that Fresenius has actively induced infringement of the asserted claims of the '823 patent by others and contributed to the infringement of these claims of the '823 patent by others.

Your job is to decide whether the asserted claims of the '823 and '547 patents have been infringed.  If you decide that any of the asserted claims of the '823 and '547 patents have been infringed, you will then need to decide any money damages to be awarded to Baxter and DEKA to compensate them for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

FINAL JURY INSTRUCTION NO. 7

**INTERPRETATION OF CLAIMS**

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issue of infringement. The decision regarding infringement is yours to make.

Terms the court has construed:

1. **"applying fluid pressure to the diaphragm to operate the pump chamber"** in the asserted claims of the '823 patent means "applying pressure through a gas or liquid to the diaphragm to operate the pump chamber;" and

2. **"membrane"** in claim 12 of the '547 patent means "barrier."

For all other claim terms that I do not specifically mention, you are to give those terms their plain and ordinary meaning as understood by a person of ordinary skill in the field.

**FINAL JURY INSTRUCTION NO. 8**

**INFRINGEMENT - BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether Baxter and DEKA have proven that Fresenius has infringed one or more of the asserted claims of the '823 and/or '547 patents. To prove infringement of any claim, Baxter and DEKA must persuade you that it is more likely than not that Fresenius has infringed that claim.

# FINAL JURY INSTRUCTION NO. 9

## DIRECT INFRINGEMENT

A patent's claims define what is covered by the patent. A product or method directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Fresenius has used the method covered by a claim of the '823 patent and/or has made, used, sold, offered for sale or imported within the United States a product covered by a claim of the '547 patent. You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patents individually, and decide whether one or more accused versions of Fresenius' Liberty Cycler infringes that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

**FINAL JURY INSTRUCTION NO. 10**

**INFRINGEMENT**

To decide whether one or more accused versions of Fresenius' Liberty Cycler infringes a claim of the '823 and '547 patents, you must compare that product with the patent claim and determine whether every requirement of the claim is included in that product or use of that product. If so, that version of Fresenius' Liberty Cycler infringes that claim. If, however, that version of Fresenius' Liberty Cycler does not have every requirement in the patent claim, it does not infringe that claim. You must decide infringement for each asserted claim separately.

**FINAL JURY INSTRUCTION NO. 10A**

**OPEN-ENDED OR "COMPRISING" CLAIMS**

The beginning, or preamble, of claim 1 of the '823 patent uses the word "comprising." "Comprising" means "including" or "containing but not limited to." That is, if you decide that every step of claim 1 of the '823 patent is performed by a user of the Alpha 1, Alpha 2, Beta 1, Beta 2, and/or commercially released versions of the Liberty Cycler, the claim is infringed. This is true even if the version of the Liberty Cycler includes steps in addition to those requirements.

For example, a claim to a table *comprising* a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

## FINAL JURY INSTRUCTION NO. 10B

### PREFERRED EMBODIMENTS

As I mentioned, in deciding whether or not the Liberty Cycler infringes the asserted patents in this case, you must compare the Liberty Cycler to the patent claims.  You must not compare the Liberty Cycler to the preferred or commercial embodiment of the claimed invention.  The claims are not limited to the specific embodiments described or depicted in the patent specification.

**FINAL JURY INSTRUCTION NO. 11**

**INDIRECT INFRINGEMENT - GENERALLY**

Baxter and DEKA also argue that Fresenius contributed to infringement by another of and induced another to infringe the asserted claims of the '823 patent. Fresenius cannot contributorily infringe or induce infringement unless Baxter and DEKA prove that someone other than Fresenius directly infringes the patent claim by making, using, selling, offering for sale or importing a product and/or using a method that includes all of the requirements of the asserted claims. If there is no direct infringement, Fresenius cannot have contributed to infringement or induced infringement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINAL JURY INSTRUCTION NO. 12**

**CONTRIBUTORY INFRINGEMENT**

Baxter and DEKA argue that Fresenius has contributed to infringement by another. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement by Fresenius, someone other than Fresenius must directly infringe a claim of the '823 patent; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the '823 patent, then contributory infringement exists if:

1.  Fresenius supplied an important component of the infringing part of the method;

2.  The component is not a common component suitable for non-infringing use; and

3.  Fresenius supplied the component with the knowledge of the '823 patent and knowledge that the component was especially made or adapted for use in an infringing manner.

**FINAL JURY INSTRUCTION NO. 13**

**INDUCING PATENT INFRINGEMENT**

Baxter and DEKA argue that Fresenius has actively induced another to infringe the '823 patent. In order for there to be inducement of infringement by Fresenius, someone else must directly infringe a claim of the '823 patent; if there is no direct infringement by anyone, there can be no induced infringement. In order to be liable for inducement of infringement, Fresenius must:

1.    have intentionally taken action that actually induced direct infringement by another;

2.    have been aware of the '823 patent; and

3.    have known or should have known that its actions would cause direct infringement by another.

In order to prove induced infringement, Baxter and DEKA must either prove that the Liberty Cycler or its use necessarily infringes the '823 patent or prove acts of direct infringement by others that were induced by Fresenius. Baxter and DEKA must further prove the number of direct acts of infringement of the '823 patent because the amount of damages for induced infringements is limited by the number of specific instances of direct infringement.

# FINAL JURY INSTRUCTION NO. 14

## WILLFUL INFRINGEMENT

In this case, Baxter and DEKA argue that Fresenius willfully infringed the '823 and '547 patents.

To prove willful infringement, Baxter and DEKA must first persuade you that Fresenius infringed a claim of the '823 and '547 patents. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement, Baxter and DEKA must persuade you that it is highly probable that prior to the filing date of the complaint, October 16, 2006, Fresenius acted with reckless disregard of the claims of the '823 and '547 patents.

To demonstrate such "reckless disregard," Baxter and DEKA must satisfy a two-part test. The first part of the test is objective. Baxter and DEKA must persuade you that Fresenius acted despite an objectively high likelihood that its actions constituted infringement of a patent. The state of mind of Fresenius is not relevant to this inquiry. Rather, the appropriate inquiry is whether the defenses put forth by Fresenius fail to raise any substantial question with regard to infringement. Only if you conclude that the defenses fail to raise any substantial question with regard to infringement do you need to consider the second part of the test.

The second part of the test does depend on the state of mind of Fresenius. Baxter and DEKA must persuade you that Fresenius actually knew, or it was so obvious that Fresenius should have known, that its actions constituted infringement of a patent.

In deciding whether Fresenius acted with reckless disregard for the '823 and '547 patents, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following:

1.   Whether Fresenius acted in a manner consistent with the standards of commerce for its industry; and

2.   Whether Fresenius intentionally copied a product of Baxter and DEKA covered by the '823 and '547 patents.

**FINAL JURY INSTRUCTION NO. 15**

**DAMAGES - BURDEN OF PROOF**

I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that Fresenius infringed any claim of the '823 or '547 patents, you must then determine the amount of money damages to be awarded to Baxter and DEKA to compensate them for the infringement.

The amount of those damages must be adequate to compensate Baxter and DEKA for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Baxter and DEKA have the burden to persuade you of the amount of their damages. You should award only those damages that Baxter and DEKA more likely than not suffered. While Baxter and DEKA are not required to prove their damages with mathematical precision, they must prove them with reasonable certainty. Baxter and DEKA are not entitled to damages that are remote or speculative.

# FINAL JURY INSTRUCTION NO. 16

## REASONABLE ROYALTY - ENTITLEMENT

If you find that Fresenius has infringed one or more of the patents-in-suit, then Baxter and DEKA should be awarded a reasonable royalty for all infringing sales.

## FINAL JURY INSTRUCTIONS NO. 17

## REASONABLE ROYALTY - DEFINITION

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention. A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place at the time when the infringing sales first began. In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations. However, you must assume that both parties believed the patent was valid and infringed. In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

In this trial, you have heard evidence of things that happened after the infringing sales first began. That evidence can be considered only to the extent that it informs your understanding of what royalty the parties would have agreed to during a hypothetical negotiation. You may not limit or increase the royalty based on the actual profits Fresenius made.

# FINAL JURY INSTRUCTIONS NO. 18

## REASONABLE ROYALTY - RELEVANT FACTORS

In determining the value of a reasonable royalty, you may consider evidence on any of the following factors:

1. Any royalties received by Baxter or DEKA for the licensing of the patent in suit, proving or tending to prove an established royalty.

2. The rates paid by Fresenius to license other patents comparable to the patents-in-suit.

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. Baxter and DEKA's established policy and marketing program to maintain his right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6. The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such collateral sales.

7. The duration of the patents-in-suit and the term of the license.

8. The established profitability of the product made under the patents-in-suit; its commercial success; and its current popularity.

9. The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which Fresenius has made use of the invention; and any evidence that shows the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the profit that arises from the patented invention itself as opposed to profit arising from features unrelated to the patented invention, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor and a licensee (such as Fresenius) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

1

**FINAL JURY INSTRUCTIONS NO. 19**

2

**DATE OF COMMENCEMENT**

3

4        Damages that Baxter and/or DEKA may be awarded by you for infringement of the

5    patents-in-suit commence in April 2006.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.1  DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## 3.2  COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [marshal] [bailiff], signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

## 3.3  RETURN OF VERDICT

A verdict form has been prepared for you.  [*Any explanation of the verdict form may be given at this time.*]  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

# FINAL JURY INSTRUCTION NO. 20

## GLOSSARY OF PATENT TERMS

Abstract: A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

Amendment: A patent applicant's change to one or more claims or to the specification either in response to an office action taken by a Patent Examiner or independently by the patent applicant during the patent application examination process.

Assignment: A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned.

Claim: Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

Continuation Application: A patent application filed during the examination process of an earlier application which has the same disclosure as the original application and does not include anything which would constitute new matter if inserted in the original application.

Continuation-In-Part (C-I-P) Application: A patent application filed during the application process of an earlier application which repeats some or all of the earlier application and adds matter not disclosed in the earlier application to support the addition of new patent claims.

Drawings: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

Elements: The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every requirement of a patent claim.

Embodiment: A product or method that contains the claimed invention.

Examination: Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable. Filing Date: Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

Infringement: Violation of a patent occurring when someone makes, uses or sells a patented invention, without permission of the patent holder, within the United States during the term of

the patent. Infringement may be direct, by inducement, or contributory. Direct infringement is making, using or selling the patented invention without permission. Inducing infringement is intentionally causing another to directly infringe a patent. Contributory infringement is offering to sell or selling an item that is a significant part of the invention, so that the buyer directly infringes the patent. To be a contributory infringer one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common object suitable for non-infringing uses.

Limitation: A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the word "requirement."

Office Action: A written communication from the Patent Examiner to the patent applicant in the course of the application examination process.

Patent: A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using or selling an invention for a term of 20 years from the date the patent application was filed (or 17 years from the date the patent issued). When the patent expires, the right to make, use or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

Patent and Trademark Office (PTO): An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

Prior Art: Previously known subject matter in the field of a claimed invention for which a patent is being sought. It includes issued patents, publications, and knowledge deemed to be publicly available such as trade skills, trade practices and the like.

Prosecution History: The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

Reads On: A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

Requirement: A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

Royalty: A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use or sell the claimed invention.

Specification: The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.